Justice ROBINSON,
concurring in part and dissenting in part.
I am pleased to be able to concur with the majority’s ruling concerning: (1) its affirmance of the Superior Court’s grant of summary judgment in Dell’s favor on count 2 of the complaint (negligence); (2) *1007 its affirmance of the Superior Court’s dismissal of the requests of plaintiff Nicholas T. Long for injunctive and declaratory relief; and (3) its affirmance of the Superior Court’s granting of plaintiffs’ motion to strike the tax administrator’s affirmative defenses. However, as for the majority’s vacating the Superior Court’s granting of Dell’s motion for summary judgment on count 1 of the complaint (alleging violation of the Deceptive Trade Practices Act), I must respectfully, but very vigorously, record my dissent. Taking into account settled principles of law as well as the plain meaning of the following words- — -immoral, unethical, oppressive, unscrupulous, and material — I am convinced that no reasonable jury could conclude that Dell violated the Deceptive Trade Practices Act (DTPA).
I have on several prior occasions insisted on (and I remain committed to) the principle that the courts should be chary about too unreflectingly disposing of cases pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. See, e.g., De-Maio v. Ciccone, 59 A.3d 125, 129 (R.I.2013); Pichardo v. Stevens, 55 A.3d 762, 765-66 (R.I.2012); Employers Mutual Casualty Co. v. Arbella Protection Insurance Co., 24 A.3d 544, 553 (R.I.2011); Shelter Harbor Conservation Society, Inc. v. Rogers, 21 A.3d 337, 346 (R.I.2011).
However, being “chary” in that regard is not the equivalent of rendering Rule 56 entirely nugatory. In my judgment, there is absolutely nothing in the record before us that would justify a reasonable jury rendering a verdict for Ms. Ricci; and, as such, I am of the decided opinion that the hearing justice did not err when he granted Dell’s motion for summary judgment on Ms. Ricci’s DTPA claim. Because the DTPA is violated if a practice is either “unfair or deceptive,” I shall address the majority’s opinion as to each of those terms seriatim. See G.L.1956 § 6-13.1-2 (“Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful.”) (emphasis added).
With respect to whether or not Dell’s actions in the instant case could be found by a reasonable jury to have been unfair, I most particularly take issue with the majority’s determination that it is possible for a reasonable jury to find such actions “immoral, unethical, oppressive, or unscrupulous.” Ames v. Oceanside Welding and Towing Co., 767 A.2d 677, 681 (R.I.2001) (internal quotation marks omitted). One need only look to the definitions of those terms to determine that Dell’s actions simply do not fall within their scope.[1] “Immoral” is defined as “[cjontrary to established moral principles.” The American Heritage Dictionary of the English Language 879 (5th ed. 2011). “Unethical” is *1008 obviously the antonym of “ethical,” which is defined as “[b]eing in accordance with the accepted principles of right and wrong that govern the conduct of a profession * * Id. at 610. “Oppressive” conduct is that which involves “[e]xercising power arbitrarily and often unjustly;” it is further defined as “tyrannical” and “[djifficult to cope with; causing hardship or depressed spirits * * Id. at 1237. Finally, an action done “unscrupulous[ly]” is done in a manner “[hjaving or showing no regard for what is right or honorable; devoid of scruples.” Id. at 1899.
After my review of the record and my consideration of the just-quoted definitions, I am in complete agreement with the hearing justice’s statement that “Dell’s honest misinterpretation of a delicate area of the state tax law cannot be held [by a reasonable jury] to be an unfair act.” In my respectful but unblinking view, it defies common sense to contend that charging too much tax, in an effort to comply with (somewhat confusing)[2] state tax regulations, is somehow contrary to moral principles or is an arbitrary exercise of power. It defies logic even further to contend that Dell’s actions were “tyrannical” or done with “no regard for what is right or honorable.” It is clear to me beyond a peradventure that Dell was attempting to charge the appropriate tax in order to do what was right, honorable, ethical, and moral— namely, to pay the state of Rhode Island what it believed to be the appropriate amount of sales tax.
The majority opinion states that, while Dell can argue that it was operating under a “good faith interpretation of tax law,” a jury could also infer that “Dell’s efforts to avoid its own tax nexus with Rhode Island unfairly resulted in consumers being charged for taxes that they should not have been charged.” Contrary to the stance adopted by my colleagues in the majority, I am completely unable to perceive any evidence presented by Ms. Ricci suggesting that Dell’s actions were anything other than a “good faith interpretation of tax law.” It is a settled legal principle that the party against whom a motion for summary judgment has been filed “must do more than simply show that there is some metaphysical doubt as to the material facts.” Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). “The mere existence of a scintilla of evidence in support of the [non-moving party’s] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also Classic Entertainment & Sports, Inc. v. Pemberton, 988 A.2d 847, 849 (R.I.2010) (“In opposing a motion for summary judgment, the nonmoving party carries the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.”) (internal quotation marks omitted). Ms. Ricci has failed to provide even such a “scintilla” of evidence; there is nothing in the record on which a reasonable jury could determine that Dell was acting in any way nefariously or underhandedly. Thus, summary judgment in Dell’s favor, even where the issue of intent was arguably involved, was proper. See Medinar-Munoz v. R.J. Reynolds Tobacco *1009 Co., 896 F.2d 5, 8 (1st Cir.1990) (“Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.”); Mein v. Dacon, 759 F.2d 989, 998 (2d Cir.1985) (“The summary judgment rule would be rendered sterile * * * if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid [summary judgment] motion.”); Brule v. Nerac, Inc., 127 Conn.App. 315, 13 A.3d 723, 727 (2011) (“Although the determination of whether the parties intended to undertake a contractual commitment is generally a question of fact * * * when the proposed language could not reasonably be construed as a basis for a contractual promise, the issue should not be submitted to the trier of fact.”).
Moreover, in what I consider to be a further departure from common sense, the majority perceives a possible deception and unfairness in a practice from which Dell does not profit one whit. DeFontes v. Dell, Inc., 984 A.2d 1061, 1063 (R.I.2009) (“There is no allegation that Dell improperly retained any of the collected tax.”); see State v. Bergevine, 883 A.2d 1158, 1159 (R.I.2005) (mem.) (“ ‘That seems to us to be the common sense of the matter; and common sense often makes good law.’ ”) (quoting Peak v. United States, 353 U.S. 43, 46, 77 S.Ct. 613, 1 L.Ed.2d 631 (1957)).
For the reasons which I have just discussed, I must dissent from the majority’s determination that a genuine issue of material fact remains with respect to whether Dell’s actions were immoral, unethical, oppressive, or unscrupulous and, accordingly, unfair.[3]
Turning next to the majority’s determination that a reasonable jury could have found Dell’s actions to be deceptive, even if I were to accept that those actions are considered a “practice * * * likely to mislead consumers acting reasonably under the circumstances,” I simply cannot agree that the actions were material — ie., that they were likely to affect the consumer’s choice. F.T.C. v. Verity International, Ltd., 443 F.3d 48, 63 (2d Cir.2006); see F.T.C. v. Patriot Alcohol Testers, Inc., 798 F.Supp. 851, 855 (D.Mass.1992). As' was helpful in determining the issue of unfairness, a dictionary definition of “material” provides helpful contextual guidance in the present circumstance; and I note that “material” is defined as “[b]eing both relevant and consequential; crucial.” The American Heritage Dictionary of the English Language 1083 (5th ed. 2011). Under that definition, even accepting the majority’s statement that false representations are “ ‘presumptively material,’ ” the dearth of evidence tending to show that Dell’s actions were “relevant and consequential” because they affected a consumer’s choice with respect to the product overcomes any such presumption. Ms. Ricci testified that she was concerned only with the full price of the computer and the service contract which she was purchasing — and not with the amount of tax being applied to her purchase. Therefore, Dell’s act of charging an amount in taxes that was minimally excessive did not change Ms. Ricci’s decision to purchase the computer. See Patriot Alcohol Testers, Inc., 798 F.Supp. at 855. *1010 As reflected in Ms. Ricci’s own admission, she was not concerned with the amount of tax being charged. Ironically, had Dell charged the appropriate amount of tax, the overall price of Ms. Ricci’s computer would have been lower, not higher, thus giving her a further incentive to purchase the computer. Therefore, contrary to the majority, I can perceive absolutely no evidence on which a reasonable jury could find Dell’s actions to be deceptive.
In conclusion, based on our settled law with respect to summary judgment and the application of the plain meaning of English words, it is my opinion that the hearing justice acted appropriately when he determined, in ruling on Dell’s motion for summary judgment, that there were no genuine issues of material fact and that Dell was entitled to judgment as a matter of law. See DeMaio, 59 A.3d at 129; see also Leavitt v. Correctional Medical Services, Inc., 645 F.3d 484, 503 (1st Cir.2011) (stating that “[biased on [the previously described] series of events, no reasonable factfinder could conclude that [an employee of the defendant corporation] acted with deliberate indifference” and, consequently, affirming a grant of summary judgment in that employee’s favor); Estate of Frusher v. Abt Associates, Inc., 643 F.Supp.2d 220, 227 (D.R.I.2009) (determining that, based on the evidence presented, a reasonable jury could not conclude that the decedent had an “unsound mind” and, that, therefore, summary judgment was appropriate); Empire Acquisition Group, LLC v. Atlantic MoHgage Co., 35 A.3d 878, 884 (R.I. 2012) (stating that “if the sequence of events in the case admits of only one reasonable [disposition], then the court should intervene and resolve the matter as a question of law”) (internal quotation marks omitted).
For these reasons, I must respectfully, but very emphatically, dissent.[4]

. I note that this Court has on numerous occasions, in past opinions, relied on dictionary definitions to provide the plain meaning of certain words. See, e.g., Olamuyiwa v. Zebra Atlantek, Inc., 45 A.3d 527, 535 (R.I. 2012) ("It is well established that [w]hen * * * a statute does not define a word, courts will often apply a common meaning as provided by a recognized dictionary.”) (internal quotation marks omitted); Palin v. Palin, 41 A.3d 248, 250 n. 3, 251 n. 5 (R.I.2012) (defining "aesthetics” and "[cjosmetology”); Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island, 31 A.3d 1263, 1269 (R.I.2011) ("This meaning is consistent with the common sense, dictionary definition of ‘public’ with respect to expenditures.”); In re Proposed Town of New Shoreham Project, 25 A.3d 482, 513 (R.I.2011) ("When, as is the case here, a statute does not define a word, courts will often apply a common meaning as provided by a recognized dictionary.”) (internal quotation marks omitted). Indeed, not only does the majority opinion rely on a dictionary definition in footnote 14, but it actually relies on the same dictionary from which I have extracted the definitions on which I base my dissent.

. I note that the interpretation of the tax regulations at issue was not fully clear until a letter ruling was obtained from the Division of Taxation on March 16, 2005 — approximately five years after Ms. Ricci bought her Dell computer and the service contract, which form the basis of the instant case.

. I recognize that, for the purposes of analyzing a claim under the DTPA, one is not necessarily required to prove every factor of the articulated standard. Indeed, the majority opinion expressly acknowledges that point: "The plaintiffs need not establish every factor, and they may prove unfairness by showing that a trade practice meets one factor to a great degree or two or three factors to a lesser degree. See Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 612 A.2d 1130, 1143-44 (1992) * * However, in my opinion, Dell’s actions which form the basis of the DTPA claim at issue in the instant case are so obviously not immoral, unethical, oppressive, or unscrupulous that I consider that conclusion sufficient to establish that summary judgment in favor of Dell was appropriate.

. I raise a final concern, which, while not an actual basis of my dissent, is a point on which I find it important to opine. The majority opinion states that, for the purposes of summary judgment, it will treat the class in the instant case as if it had already been certified — which it has not been. (I explicitly decline to take a position as to the correctness vel non of that very broad interpretation of what Rule 56 of the Superior Court Rules of Civil Procedure permits.) As a consequence of that rather ipse dixit “as if” assumption, when the majority considers whether or not Ms. Ricci suffered a "substantial injury” for the purpose of determining whether Dell’s actions were "unfair,” it aggregates the damages suffered by the entire class; it states as follows:
"If the only injury to be considered in the light most favorable to plaintiff was [Ms. Ricci’s injury of] $16.31, we may well agree with the Superior Court justice. However, because we treat the class as certified for purposes of drawing reasonable inferences in favor of the nonmoving party, and viewing evidence in the most favorable light, we will consider the evidence in the record of potential injury to the class.”
In my view, the majority’s statement aggregating the damages of the entire class is completely inconsistent with established law with respect to class actions. One treatise summarizes as follows the state of American law in this regard:
“Named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other members of the class that they purportedly represent. If a named plaintiff has not been injured by the wrong alleged in the complaint, then no case or controversy is presented, and the plaintiff has no standing to sue either on his or her own behalf or on behalf of a class. A plaintiff without a claim cannot be allowed to bring suit by making a class-action allegation. A representative cannot adequately represent a class when the representative does not state a valid cause of action.” 59 Am.Jur.2d Parties § 61 at 507 (2012) (footnotes omitted).
It follows (from the just-quoted statement and the cases relied on by defendants, which the majority disregards — namely, Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d *1011 606 (1996); Jackson v. Resolution GGF Oy, 136 F.3d 1130 (7th Cir.1998); and Evans v. Taco Bell Corp., CIV. 04CV103JD, 2005 WL 2333841 (D.N.H. Sept. 23, 2005)) that, if a named plaintiff must state a valid claim, including alleging an injury, then in a rare case like the one before us (where the amount of injury is a factor in meeting the requirements to prove the claim alleged), the named plaintiff must also individually meet those requirements.
I look to the 2003 Advisory Committee's Notes to Rule 23 of the Federal Rules of Civil Procedure, which, in addressing factors that could affect the timing of a class certification decision, stated: "The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified.” See also 3 William B. Rubenstein, Newberg on Class Actions § 7:10 at 50 (2013); cf. 6A Federal Procedure, § 12:284 at 396 (Lawyers Ed. 2004) (stating that the failure by a district court to address the class action issue on a Fed. R.Civ.P. 12(b)(6) motion to dismiss "does limit the scope of the court of appeals’ judgment in that, because no class of plaintiff or defendants is certified, * * * the plaintiffs' claims must be treated as being brought solely by the named plaintiffs against the named defendants”). The statement in the Advisory Committee Notes clearly contemplates that, when a motion for summary judgment is brought prior to the certification of the class, the motion for summary judgment is, with respect to the individual claims of the named plaintiffs, not those of the entire class. I further note that, in arguing to the contrary, the majority opinion cites to only one legal source in the paragraph that it devotes to the issue of "substantial injury;” that source does not discuss and is not relevant to the issue of "substantial injury.” In fact, the majority opinion does not cite to any direct source anywhere in support of its apparent conclusion that, if a class were to be treated as having been certified for the purposes of summary judgment, the damages could then be aggregated.
Moreover, the majority’s holding muddies the waters with respect to who is bound by a Superior Court’s grant of summary judgment in a defendant’s favor prior to a ruling on class certification. See 6A Federal Procedure, § 12:276 at 377 (stating the typical rule that, if a motion for summary judgment is "granted before a class is certified, the ruling binds only the individual parties”); see also id. § 12:404 at 561 ("A summary judgment entered in favor of the party opposing a class will not bind absent class members * * * prior to a class action determination. However, if a summary judgment is granted to the party opposing the class after the class has been certified * * * the judgment will have classwide res judicata effect on all those class members who do not opt out of the class upon being provided with notice.”).
For the foregoing reasons, it is my opinion that, in accordance with the law on class actions and irrespective of the majority’s having, for the purposes of summary judgment, treated the class as having been certified, the named plaintiff representing the class must individually meet the requirements for stating a claim under the DTPA, including (as one factor) whether he or she sustained a "substantial injury.”
In order to make clear my exact line of reasoning, I reiterate that I explicitly decline to opine on the propriety of the majority’s decision to treat the plaintiff class as if it had been certified. For that reason, I need not contend with Chavers v. Fleet Bank (RI), N.A., 844 A.2d 666 (R.I.2004), which is cited by the majority. The opinion in Chavers is used by the majority only to support its decision to treat the plaintiff class as having been certified; Chavers does not support, and indeed could not support, the portion of the majority opinion with which I take issue; my point, succinctly stated, is that the majority errs in aggregating the damages of the potential plaintiff class, regardless of whether or not the majority treats the plaintiff class as having been certified.